**In the Matter of:**

Robert L. Arnold

vs.

Bayview Loan Servicing, LLP, et al.

**CLARK RUSHIA**

*August 14, 2015*



www.OrangeLegal.com
800-275-7991

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                              1

```
 1              IN THE UNITED STATES DISTRICT COURT FOR THE
                       SOUTHERN DISTRICT OF ALABAMA
 2                          SOUTHERN DIVISION


 3                          CASE NO.:  14-543

 4      ROBERT L. ARNOLD, individually
        and on behalf of all similarly
 5      situated individuals

 6           Plaintiff,

 7

 8      vs.

 9

        BAYVIEW LOAN SERVICING, LLP,
10      et al,

11           Defendants.

12                                    /

13

14
        DEPOSITION OF:        CLARK ANTHONY RUSHIA
15
        DATE TAKEN:           Friday, August 14, 2015
16
        TIME:                 8:40 a.m. - 1:50 p.m.
17
        PLACE:                Orange Legal - Fort Lauderdale
18                            900 S.E. 3rd Avenue
                              Fort Lauderdale, Florida 33316
19
        TAKEN BY:             The Plaintiff
20
        REPORTED BY:          Barbara L. Kent, RMR, RPR, FPR,  CSR
21                            Court Reporter and Notary Public

22

23

24

25
```



Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                    13

```
 1    servicing division.  Since I had a fairly extensive

 2    knowledge of servicing, and since the servicing

 3    department was in need of someone who had a systems and

 4    IT capability -- again, for the reasons previously

 5    described -- it seemed to be a natural fit to move over

 6    into an operations role in the servicing department.

 7         Q.    And what was your job title?

 8         A.    When I moved to servicing -- operations

 9    manager.

10         Q.    Okay.  Operations manager?

11         A.    Correct.

12         Q.    And what do you do as operations manager on a

13    day-to-day basis?

14         A.    I am responsible for several servicing

15    related functions, one of them is system administration

16    for a number of our applications.  That would entail

17    adding new users, removing users, and setting them up in

18    correct security templates, commensurate with whatever

19    their job titles are.

20              I also handle, for example, the property

21    inspections that Bayview performs.  I am in charge of the

22    letters team, which is a group that assists the business

23    units in facilitating the letters they need to go about

24    their processes.  And I also provide subject matter

25    expertise on credit bureau reporting.
```



**Orange Legal**
**800-275-7991**

EXHIBIT E

```
 1        Q.    What about monthly statements?  Do you
 2   oversee them sending the monthly statements?
 3        A.    I do not oversee the sending of monthly
 4   statements, no.
 5        Q.    Okay.  Are you familiar with the procedure --
 6        A.    I am.
 7        Q.    -- that's used --
 8        A.    Yes.
 9        Q.    -- for the monthly statements?
10        A.    I do.
11        Q.    Okay.  Now, since you've been with Bayview,
12   have you had any training with regard to the Real Estate
13   Settlement Procedures, or the Fair Debt Collection
14   Practices Act?
15        A.    Bayview requires employees in any servicing
16   roles to take the -- I don't schedule the courses, but we
17   are assigned courses on a regular basis.  Most months, we
18   have to complete a number of courses.  And I, as any
19   Bayview Servicing employee, have to complete those
20   courses.
21        Q.    Are those taught in-house?
22        A.    They're not, but they're on-line courses.
23        Q.    And I asked about RESPA, and the Fair Debt
24   Collection Practices Act.  What about the Fair Credit
25   Reporting Act?  Are you trained in that, as well?
```



Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                          20

```
 1              (Reporter read back:  "And number six, it is

 2         alleged that Bayview is regularly engaged in the

 3         practice of debt collection.  And in this case, in

 4         particular, it was collecting a debt on behalf of a

 5         trust; is that correct?")

 6              MR LYNCH:  Are you talking about this case,

 7         or in general?  I guess he asked, this case.

 8    BY MR. UNDERWOOD:

 9         Q.    Is it a true statement that Bayview, with

10    regard to the allegations in this case, was collecting

11    moneys on behalf of the trust that's named on the first

12    page?

13         A.    To the best of my knowledge, yes.

14         Q.    Okay.  And how do you know if that statement

15    is true or false?

16         A.    The investor on the loan is the trust.

17    Therefore, the owner of the loan would be the trust.

18         Q.    All right.  And the trust -- let me ask it

19    this way:  Is the trust entirely made up of defaulted

20    loans?

21         A.    That, I don't know.

22         Q.    What do you know about this -- let me --

23    well, I may have to come back to that question -- all

24    right.

25         A.    Okay.
```



Orange Legal
800-275-7991

EXHIBIT E

1        Q.    Let me show you what I have marked as

2    Exhibit 4; have you seen that document before?

3        A.    I have.

4        Q.    All right.  And I'm going to run through it,

5    sort of like we did with the complaint, and ask you some

6    questions about what's alleged in it.

7              And when did you first see Exhibit Number 4?

8        A.    In the notebook that was provided to me by

9    Mr. Lynch.

10       Q.    Did he use notebooks sort of like I do?

11       A.    His are skinnier.

12       Q.    Okay.

13       A.    And black.

14       Q.    Let me ask you about paragraph three in

15   Exhibit 4.

16       A.    Uh-huh.

17       Q.    I just have a general question about it, it's

18   this:  What is your understanding of the purpose of the

19   Fair Debt Collection Practices Act?

20             MR LYNCH:  I'm going to object to form, that

21        calls for a legal conclusion.  You certainly can

22        answer the question but --

23             THE WITNESS:  I, personally, in my role, am

24        not responsible for direct contact with borrowers.

25        I am familiar with the Fair Debt Collection



Orange Legal
800-275-7991

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                            25

```
 1        Practices Act more from a systemic perspective, as

 2        far as how it applies to our systems.  What codes

 3        would be used to cease and desist.  Things of that

 4        nature.

 5             So, again, my -- my -- I can't get into the

 6        finite details of the Fair Debt, this is the FDCPA.

 7        And my familiarity with it is more from a system

 8        perspective.

 9   BY MR. UNDERWOOD:

10        Q.    All right.  Well, let me ask the question

11   this way:  How does -- is part of your job monitoring

12   compliance with the Fair Debt Collection Practices Act?

13        A.    No.

14        Q.    How does the Fair Debt Collection Practices

15   Act impact your job at Bayview?

16        A.    If, under one of those areas of my

17   jurisdiction, there's a component of the FDCPA.

18        Q.    Okay.  Give me an example.

19        A.    For example, if a situation occurs where a

20   letter, or statement, or phone call is not to be made for

21   any reason, they might come to me and say, is there a

22   code that we use?  And what code would we use to stop

23   this particular process from occurring?

24             I can then investigate, determine if there is

25   a code.  If there's not, we can create one.
```



Orange Legal
800-275-7991

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                 26

1      Q.    I see.  Now, when you say a code, now what do

2   you mean by that?

3      A.    A code inside of our primary servicing system

4   that drives other processes.

5      Q.    Okay.  What is your primary servicing system?

6      A.    It's the holding company, is called Black

7   Knight Financial Services, BKFS.  The actual servicing

8   component is -- acronym's, MSP, and that's Mortgage

9   Servicing Package.

10          My understanding is, it's the largest

11  platform for mortgage servicing in the U.S.

12     Q.    Now, when you create a code like you were

13  describing earlier, is that to make the -- the servicing

14  platform perform a task, or not to do one?

15     A.    That's one purpose a code can be used for.

16     Q.    All right.  Tell me a little -- what other

17  things?

18     A.    Reporting.

19     Q.    Okay.

20     A.    Assignment of certain processes to certain

21  departments.

22     Q.    Now, if you wanted MSP to perform a certain

23  task, or make a code, is that, like, computer code, or is

24  it macro?  Or just tell me, just in a general fashion,

25  how that works?



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                27

1        A.      In many -- in many cases, it's simply a field

2    that is inside the system that be populated by either a

3    user, or a process; and you would then wrap particular

4    rules around that code.

5            Some codes are system driven, the user has

6    no -- the ability to change the original intent of that

7    code.  Other codes are user defined.  The user has full

8    control over what those codes are, and how they are used.

9        Q.      Okay.  Now, with regard to Fair Debt

10   Collection Practices Act, I am going to ask you a few

11   questions about it.

12       A.      Uh-huh.

13       Q.      Are you aware that it regulates the time of

14   day that a debt collector can call a consumer?

15       A.      I'm aware there is a time of day clause, yes.

16       Q.      Okay.  And are you aware that it requires

17   certain disclosures in letters, or statements that may be

18   mailed to the consumers?

19       A.      I am aware of those clauses, as well; yes.

20       Q.      All right.  Do you know when those clauses

21   are to be used in correspondence that are sent to a

22   consumer?

23       A.      No, I'm not --

24       Q.      And under what circumstances?

25       A.      No.



**Orange Legal**
**800-275-7991**

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                                    32

```
 1   information on the loan, including the status of the
 2   loan, any actions that are underway in the way of pending
 3   modification, foreclosures, any active bankruptcies.  If
 4   bankruptcies were discharged, they should be providing us
 5   with the discharge information.
 6        Q.    All right.  Now, in the case we're here about
 7   this morning, was Bayview provided with a discharge
 8   information regarding the Arnolds?
 9        A.    The discharge date was provided to us.
10        Q.    All right.  And how do you know that?
11        A.    It's in our servicing system.
12        Q.    Now, if servicing is assumed on a loan that's
13   in an active bankruptcy case, how does that -- or does
14   that impact what notices Bayview will send that people
15   who's --
16        A.    Who --
17        Q.    -- making the payments on that loan, and how
18   does it affect it?
19              MR. LYNCH:  I'm going to object to form.
20              You can answer.
21   BY MR. UNDERWOOD:
22        Q.    I didn't ask that very well.  Why don't I
23   just start all over.
24              Let me ask you, though, that -- the Smith's
25   have a loan, and Bayview's going to assume the servicing
```



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                    33

1   **of the loan, and they're in an active bankruptcy case.**

2   **How does that affect -- if it does -- the notices that**

3   **Bayview will send the Smith's regarding the transfer of**

4   **servicing?**

5               MR LYNCH:  I'm going to object to form.

6               When?  I think you have to be a little bit

7        more -- I don't think that's a fair question.  I'm

8        going to object to form.  You can answer.

9               THE WITNESS:  If a loan is in an active

10       bankruptcy, when Bayview gets the servicing of the

11       loan, we will have to activate an MSP, it's called

12       a bankruptcy work station.

13  BY MR. UNDERWOOD:

14       **Q.   Okay.**

15       A.   Once the loan is active in the bankruptcy

16  work station, it becomes -- it falls under the

17  jurisdiction of our bankruptcy department.  And, again,

18  thanks to those codes we spoke of, it puts the loan into

19  an entirely different area of servicing.  It's under the

20  jurisdiction of the bankruptcy department.

21       **Q.   All right.  And did that happen with Arnolds'**

22  **loan?**

23       A.   It did not.

24       **Q.   Okay.  And do you know why not?**

25       A.   It was not an active bankruptcy.



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                            42

1        Q.      Okay.  Does Bayview send the statements

2     itself, or is there someone else that sends them?

3        A.      A vendor produces these statements on behalf

4     of Bayview.

5        Q.      Who is that?

6        A.      National Computer Print, known as NCP.

7        Q.      Where are they located?

8        A.      Headquartered in Nashville, Tennessee.  We

9     work with the Jacksonville plant; Jacksonville, Florida.

10       Q.      And are the statements mailed from

11    Jacksonville?

12       A.      They are.

13       Q.      Now who is Barbara Beckham?

14       A.      Barbara retired July 31st.  She was head of

15    our MSP team.

16       Q.      And what does she do as head of the MBS team?

17       A.      She has a number of people under her that are

18    subject matter experts in the MBS system.

19       Q.      What about Frank Turner, what's he do?

20       A.      He's a foreclosure coordinator.

21       Q.      Okay.  What does a foreclosure coordinator

22    do?

23       A.      He would shepherd a loan through the

24    foreclosure process, working with attorneys.

25       Q.      And was he -- did he oversee the foreclosure



Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                          46

```
1    had been discharged at bankruptcy?

2         A.    I have.

3         Q.    Okay.  Can you tell us why this morning, that

4    they were sent the statements even though --

5         A.    Sure.

6         Q.    -- they had been discharged?

7         A.    When we received the loan from the prior

8    servicer, the loan was coded as a foreclosure, which

9    prevents statements from going out.

10               One of the codes that's used to denote that a

11   loan is in foreclosure is what we call a "man code."  It

12   is also called a person code, to be politically correct.

13               It's -- it's true, it used -- when I --

14               MR LYNCH:  I don't think we received that.

15               THE WITNESS:  Well, when I -- when I -- it

16          was called a man code when I started, and then I

17          noticed when I got back into it, they call it a

18          person code now.

19   BY MR. UNDERWOOD:

20        Q.    Okay.

21        A.    We still refer to it as a man code.

22               This was coded with a foreclosure man code,

23   which prevented any statements from going out, and no

24   statements went out until this one on 12/2.

25        Q.    All right.  Well, there's a -- is the same
```



Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                47

```
 1    thing true about the second -- that other statement that

 2    they received?  The one that's dated 12/16?

 3        A.    Yes.  Again, the man code indicating a

 4    foreclosure was inadvertently removed, which allowed the

 5    statement process to actually issue a statement.

 6             That man code that allowed those statements

 7    to go out, was in effect, both on 12/2, and 12/16.

 8        Q.    And did this happen to anybody other than the

 9    Arnolds?

10        A.    Not that we're aware of.

11        Q.    Are you aware of any other suits against

12    Bayview for alleging violations of the Fair Debt

13    Collections Act?

14        A.    I do not.

15        Q.    Do you know if there are any other ones?

16        A.    I honestly do not know.

17             MR. UNDERWOOD: Let's -- do you mind if we

18        take a break?  I need a little break now.

19             MR LYNCH:  That's fine.

20             MR. UNDERWOOD:  Okay.

21             (At about 10:01 a.m. recess.)

22             (At about 10:07 a.m. proceedings reconvened.)

23             MR. UNDERWOOD:  We're back on the record.

24    BY MR. UNDERWOOD:

25        Q.    Explain to me, how does one put -- place a
```

Orange Legal
800-275-7991

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                              48

```
 1   man code on a file, or remove a man code from a file?

 2        A.    Okay.  It could be done two ways.  It can be

 3   done manually, by someone who actually just goes into the

 4   system, and goes to that field, and changes the code.

 5             Or it can be part of a process where the code

 6   is set up as such where, if you do or activate something

 7   in one system, it will automatically change codes in

 8   another.

 9        Q.    All right.  And have you done an

10   investigation about how the man code was -- was it added

11   or removed in the Arnolds' file?

12        A.    It was changed.

13        Q.    Changed.  Okay.  How was it changed?

14        A.    It was changed from an F, which denotes

15   foreclosure.

16        Q.    Okay.

17        A.    To an A, that reassigns it to asset

18   management.

19        Q.    And was it -- was that done manually, or was

20   that something that was --

21        A.    Systematically.

22        Q.    It was done systematically?

23        A.    Yeah.

24        Q.    All right.  And how did it happen

25   systematically?
```



Orange Legal
800-275-7991

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                                49

```
 1        A.    A user in our quality assurance area was

 2   performing a pre-foreclosure preview of the Arnold loan.

 3        Q.    Who was that user?

 4        A.    Her name was Farrah, F-A-R-R-A-H.  Last name,

 5   Peterson with an O.

 6        Q.    All right.  And how did she happen to do

 7   that?

 8        A.    She was performing her review in her system

 9   of record, which is called RAM, which is an acronym for

10   real estate asset management.  And part of what she does

11   is -- goes through a checklist as part of her procedures,

12   to make sure that all the regulatory components and all

13   of the policies and procedures were followed in the

14   foreclosure process, and in the regulatory process who

15   would enable foreclosure sale to proceed.

16             And as part of her review, she sent some

17   e-mails to the asset management to get some required

18   certifications, and one thing that she did, her error

19   was, she reactivated the loan in RAM.  Which was not part

20   of her standard operating procedure.

21        Q.    All right.  And have you seen those e-mails?

22        A.    I have seen her notes stating that she

23   e-mailed the asset manager, and the asset manager's

24   manager to acquire the proper, the SPOC affirmation,

25   S-P-O-C, and check list.  Hand certification checklist.
```



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                 51

```
 1        think they --

 2              THE WITNESS:  The e-mails may not be

 3        available.

 4              But the documents that I'm referring to are

 5        the collection notes.

 6              MR. UNDERWOOD:  We're going to go over those.

 7              THE WITNESS:  Okay.  And the result of those

 8        e-mails were the signed hand certifications by the

 9        asset manager that she requested to perform this

10        function, which are also part of the documents.

11   BY MR. UNDERWOOD:

12        Q.    Okay.  Now, did this change, the man code,

13   affect any other file as far as you know, other than the

14   Arnold file?

15        A.    Just the Arnold file.

16        Q.    How do you know that for sure?

17        A.    It's the only one I'm aware of.

18        Q.    Well, could there have been others?

19        A.    It's not impossible.  However, it's not part

20   of their procedures.

21        Q.    Okay.  Let's go back to Exhibit 7.

22              The interrogatory responses, and please drop

23   down to -- let's see, number six.

24        A.    Okay.

25        Q.    I think we'll just talk about some of these.
```



**Orange Legal**
**800-275-7991**

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                        53

```
 1              MR LYNCH:  Well, I'm going to object to form

 2        of the question.  You can answer.

 3              THE WITNESS:  I'm not aware if it's a

 4        violation of the FDCPA.  Again, I'm not familiar

 5        enough with the minutia of the FDCPA to know that.

 6   BY MR. UNDERWOOD:

 7        Q.    Sure.  I understand that.

 8              Okay.  Do you understand that that's what the

 9   Arnolds are alleging?

10        A.    I acknowledge that.

11        Q.    Okay.  You would agree with me that those

12   statements shouldn't be mailed to the Arnolds; wouldn't

13   you?

14        A.    I would agree that the man code should not

15   have been changed on the Arnolds' loans from an F to an

16   A, because it -- it was clearly headed for a foreclosure

17   sale.

18        Q.    All right.  Well, it had already been

19   foreclosed; hadn't it?

20        A.    At that point in time, no.

21              The change to the code was done prior to the

22   foreclosure sale.

23        Q.    Well, when did the foreclosure take place?

24        A.    November 25th.

25        Q.    Okay.  And the statements were in December,
```



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                60

```
 1      Q.    You can't foreclose unless it's defaulted?

 2      A.    Of course, right.  Correct.

 3      Q.    And at the time that Bayview took over the

 4  servicing, the Arnolds' loan was in default?

 5      A.    Yes.

 6      Q.    Okay.  So, assuming it was a consumer loan

 7  that the Arnolds were living in the home, and the

 8  house -- and making it their home, or had, in the Fair

 9  Debt Collection Practices Act would apply to it; right?

10            MR LYNCH:  Objection to form.

11            THE WITNESS:  Had we been performing debt

12       collection on the loan, yes.  But we weren't

13       performing debt collection on this loan.  Again, it

14       was a foreclosure.  Debt collection at that point

15       ceases.

16  BY MR. UNDERWOOD:

17      Q.    Well, maybe you sent them statements

18  requesting money; you agree with that; right?

19      A.    Due to the error, correct.

20      Q.    Okay.  You agree with me that both of the

21  statements that the Arnolds received, said that Bayview

22  was a debt collector; you agree with that statement?

23      A.    The statements said that Bayview was a debt

24  collector?

25      Q.    Yeah.
```



Orange Legal
800-275-7991

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                    97

1   that's what Miss Arnold was calling about?

2       A.    It might be.

3       Q.    Said property was discharged in bankruptcy,

4   recently sold.

5             Okay.  We're finished with that, now.

6             Okay.  Let's go to document number 236, and,

7   excuse me, what's this document for?

8       A.    This is labeled an OCC introduction letter.

9   This would be a required regulatory letter introducing

10  the single point of contact to the borrower.

11      Q.    Okay.  We have got some more letters that

12  we're going to go through, but right now I want to go

13  through those documents in the order that they were

14  produced.  So let's go to page 269.

15            Change subjects a little bit.

16            All right.  Have you seen this before?

17      A.    I haven't seen it in a printed form.  This

18  is, I believe, the introduction screen of our on-line

19  training courses.

20      Q.    Okay.  And what's this one for, in

21  particular?

22      A.    Fair Debt Collection Practices Act.

23      Q.    And it says it's 126 pages long.  Have you

24  taken this on-line training?

25      A.    I have.



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                          130

```
 1          Q.     Anybody else that you can think of?

 2          A.     Corporate counsel, Robert Hodapp.

 3     H-O-D-A-P-P.

 4          Q.     And are you a lawyer?

 5          A.     I'm not.

 6          Q.     And you were asked by Mr. Underwood some

 7     questions about the Fair Debt Collection Practices Act.

 8     Do you have any understanding of the legal concepts in

 9     that act?

10          A.     Not really.

11          Q.     And Mr. Underwood also asked you about the

12     terminology, debt collector.  Do you remember those

13     questions?

14          A.     I do.

15          Q.     Do you know what the legal definition of a

16     debt collector is?

17          A.     Probably not the legal definition, no.

18          Q.     In the Arnolds -- Mr. Arnold's situation, was

19     Bayview attempting to collect a debt once it took over

20     the service?

21          A.     No.

22          Q.     Can you explain that?

23          A.     Bayview was attempting to see if there were

24     any options prior to foreclosure, in the event the

25     borrowers wanted to retain the home.  That's what we're
```



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                138

```
 1                    CERTIFICATE OF OATH

 2    STATE OF FLORIDA

 3    COUNTY OF BROWARD

 4        I, Barbara L. Kent, RMR, RPR, FPR, CSR-MI, Notary

 5      Public, State of Florida, certify that Clark Anthony

 6    Rushia personally appeared before me on Friday,

 7    August 14, 2015, and was duly sworn.

 8

 9    Signed this 14th day of August, 2015.

10

11

12

13

14

15
              Barbara L. Kent, RMR, RPR, FPR, CSR-MI
16            Notary Public - State of Florida
              My Commission No.  FF 101803
17            My Commission Expires:  March 13, 2018

18

19

20

21

22    Personally known

23    Produced Identification  x

24    Type of Identification Produced Driver's License

25
```



**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                                    139

```
 1                   CERTIFICATE OF REPORTER

 2     STATE OF FLORIDA

 3     COUNTY OF BROWARD

 4          I, Barbara L. Kent, RMR, RPR, FPR, CSR-MI, Notary

 5     Public, State of Florida, do hereby certify that I was

 6     authorized to and did stenographically report the

 7     deposition of Clark Anthony Rushia; that a review of the

 8     transcript was not requested; and that the foregoing

 9     transcript, pages 4 through 137, is a true and accurate

10     record of my stenographic notes.

11          I FURTHER CERTIFY that I am not a relative, or

12     employee, or attorney, or counsel of any of the parties,

13     nor am I a relative or employee of any of the parties'

14     attorney or counsel connected with the action, nor am I

15     financially interested in the action.

16

17     DATED this 12th day of September, 2015.

18

19

20

21

22                         Barbara L. Kent

23

24

25
```



ORANGE LEGAL

**Orange Legal**
**800-275-7991**

EXHIBIT E

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA

| | | | |
|---|---|---|---|
| 1 | | ERRATA SHEET | |
| | | DO NOT WRITE ON TRANSCRIPT – ENTER CHANGES | |
| 2 | IN RE: | Robert Arnold vs. Bayview Loan Servicing | |
| | | Case No:  14-543 | |
| 3 | DATE: | August 14, 2015 | |
| 4 | | Deposition of Clark Anthony Rushia | |
| 5 | PAGE | LINE | CHANGE  & REASON |
| 6 | 18 | 2 | Typographical Correction: by the CERNER - - by Mr. Lynch -> by Mr. Lynch |
| 7 | 28 | 10 | Typographical Correction: City Mortgage -> CitiMortage |
| 8 | 28 | 14 | Typographical Correction: City –> CitiMortage |
| 9 | 29 | 22 | Typographical Correction: Loaded –> load it |
| 10 | 30 | 12 | Typographical Correction: welcome letter.  Once –> welcome letter once… |
| 11 | 31 | 4 | Typographical Correction: City Mortgage -> CitiMortage |
| 12 | 31 | 16 | Typographical Correction: City Mortgage -> CitiMortage |
| 13 | 35 | 21 | Inaccurate: Yes. -> Whether Bayview is a debt collector is a determination that must be made with respect to each loan. |
| 14 | 42 | 16 and 18 | Typographical Correction: MBS –> MSP |
| 15 | 44 | 2 | Typographical Correction: MBS –> MSP (2 places) |
| 16 | 44 | 7-8 | Incomplete:  discharged under the Chapter 7 Bankruptcy. -> discharged under the Chapter 7 Bankruptcy and their Property was foreclosed. |
| 17 | 44 | 20-21 | Typographical Correction: MBS –> MSP (2 places) |
| 18 | 47 | 10 | Inaccurate: Not that we're aware of. -> No. the change of the man code on the Arnolds' loan affected |

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA

|    |    |       | only the Arnolds and no one else. |
|----|----|-------|-----------------------------------|
| 19 |    |       |                                   |
| 20 | 49 | 2     | Typographical Correction: preview –> review |
| 21 | 49 | 14    | Typographical Correction: process who –> process, which |
| 22 | 51 | 17    | Inaccurate: It's the only one I'm aware of. -> Because the change made to the man code on Arnolds' loan changed only the Arnolds' loan. |
| 23 | 51 | 19-20 | Inaccurate:It's not impossible.  However, it's not part of their procedures. -> No, there could not be any others.  The man code on Arnolds' loan was inadvertently changed in direct response to Farrah's sending the Arnolds' loan back to asset management. There is no systematic way it could have changed anyone else's loan.  It's systematically impossible. |
| 24 | 54 | 9     | Inaccurate: I have not looked into that. -> The Arnolds got credit for the price that was paid at the foreclosure, but the statements were not updated to reflect the credit because the Arnolds were not intended to receive the statements. |
| 25 | 81 | 24    | Typographical Correction: MPB ->NPV; Train –> Transaction |
| 26 | 82 | 14    | Typographical Correction: Warn –>Warm |
| 27 | 83 | 3     | Typographical Correction: new –> DIL |
| 28 | 84 | 8     | Typographical Correction: inactive –> in active |
| 29 | 85 | 17    | Typographical Correction:City Mortgage –> CitiMortage |
| 30 | 90 | 11    | Typographical Correction:into an MSP –>into MSP |
| 31 | 95 | 12    | Typographical Correction:warn, transferred –> warm transfer |

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA

| 32 | 96 | 12 | Typographical Correction:DIM was ->Demos |
|----|-----|-----|------|
| 33 | 99 | 18 | Typographical Correction: OV -> Overview |
| 34 | 102 | 13 | Typographical Correction: 9/21/012 –> 9/21/2012 |
| 35 | 103 | 5 | Typographical Correction: City Mortgage –> CitiMortage |
| 36 | 103 | 12 | Typographical Correction: City Mortgage –> CitiMortage |
| 37 | 109 | 15 | Inaccurate: Because we have to notify the – the property has to be insured at all times, and we have to notify the borrower if we force place insurance -> Because the property has to be insured at all times. In this case, the Arnolds received the force-placed insurance letter because the man code on their loan was inadvertently changed to A, which does not suppress force-placed letters from being sent.. |
| 38 | 113 | 1 | Typographical Correction: only if -> only, if |
| 39 | 127 | 2-17 | Incomplete: replace with -> When we receive a servicing transfer and board the loan, we check for any condition that would preclude statements from going out, such as the Arnolds' loan, which was in foreclosure.  If those conditions are present, we will code the loan appropriately, and those statements will not get sent out.  We have a vast number, thousands of customers in bankruptcy who want to receive monthly statements and make their monthly payments.  We send monthly statements to those customers, with the appropriate disclaimer that it is for informational purposes only, so that customers can make payments if they choose to do so (such as when the customer desires to retain the property or reaffirm the debt).  However, if any discharged customer requests that we stop sending a statement for any reason, our policy and procedure is to code the loan to prevent statements from being sent. |
| 40 | 128 | 18 | Inaccurate: a payment history –> periodic monthly statements |

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA

| 41 | 131 | 20 | Typographical Correction: Their –> They're |
| 42 | 132 | 9 | Typographical Correction: -- foreclosures –> is in foreclosure |
| 43 | 140 | 2 | Typographical Correction: Ronald –> Robert |

Robert L. Arnold vs. Bayview Loan Servicing, LLP, et al.
CLARK RUSHIA                                                        140

```
 1                              ERRATA SHEET
                DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES
 2      IN RE:    Ronald Arnold vs. Bayview Loan Servicing
                  Case No:  14-543
 3      DATE:     August 14, 2015

 4                 Deposition of Clark Anthony Rushia

 5      PAGE        LINE         CORRECTION & REASON

 6      _____

 7      _____
                  |PLEASE SEE ATTACHED ERRATA SHEET            |
 8      _____|_____|

 9      _____

10      _____

11      _____

12      _____

13      _____

14      _____

15      _____

16      _____

17      _____

18      _____

19      _____

20      Under penalties of perjury, I declare that I have read the
        forgoing document and that the facts stated are true.
21
        Signature: _____ Date: 10/13/2015
22

23

24

25
```



**Orange Legal**
**800-275-7991**